UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

JONNARD NELSON,

        Plaintiff,                      Case No. 2:19-cv-9

v.                                          Honorable Paul L. Maloney

SUSAN H. WILSON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Thompson.

## Discussion

    I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues Nurse Practitioner Susan H. Wilson, Assistant Resident Unit Supervisor Connie Thompson, Corrections Officer Unknown Stabile, and Nursing Supervisor Gerald Covert.

Plaintiff alleges that on December 19, 2017, he was sent to War Memorial Hospital for severe stomach pain. It was later determined that Plaintiff had a blockage in his large intestine. Plaintiff was informed that he required abdominal surgery in order to remove the blockage. Plaintiff states that the transporting officer called the prison to inform them of Plaintiff's condition and was told that Plaintiff's blockage might be a "balloon of drugs." The officer asked Plaintiff if he had ingested any drugs and Plaintiff responded that he had "no idea" what the officer was talking about.

Plaintiff was hospitalized for one week following surgery and was heavily medicated during this time because he was experiencing excruciating pain. While still in the hospital, an inspector and Deputy Warden asked Plaintiff if he had swallowed any drugs, and Plaintiff stated that he did not know what they were talking about and did not want to talk to them. They told Plaintiff that the object which had been removed from his intestines had been taken by the Michigan State Police, who were going to discover if it contained drugs. Because of the assumption that Plaintiff had been trying to smuggle drugs, his property was packed up and sent to the east side of the prison.

On December 23, 2019, Plaintiff was released from the hospital. Plaintiff's doctor told him to avoid lifting anything over 10 pounds and any strenuous activity. The doctor also advised Plaintiff to take small walks and to splint his abdomen when getting up and down. The doctor told Plaintiff that she would like to give him something strong for his pain, but she was afraid that the prison would not give him the medication.

Upon returning to the prison, Plaintiff was escorted to health care and was seen by a day nurse. The nurse told Plaintiff that she knew he was the prisoner who had swallowed the drugs, and said that she bet he'd learned his lesson. The nurse gave Plaintiff a little baggy of Tylenol and assigned Plaintiff to a top bunk. Plaintiff asked the nurse how he was supposed to get up and down from the top-bunk in his condition. The nurse then made a phone call and Plaintiff was given a bottom bunk. The nurse then gave Plaintiff written and oral instructions and explained that Plaintiff would be called out twice a day for bandage changes and check ups.

Plaintiff asked to have his meals brought by tray because he was in too much pain to go to the chow hall. Defendant Stabile refused to allow Plaintiff to receive his meals on a tray in his cell, so Plaintiff went four days without eating. During a health care visit on December 26, 2017, Plaintiff was given a detail for meals on trays until December 28, 2017. The detail also provided Plaintiff a bottom bunk detail until February 28, 2018, and stated that he was not to lift more than 10 pounds until February 6, 2018.

On January 2, 2018, Plaintiff developed excruciating pain and bleeding from his wound. Plaintiff's bandage and sheets were completely soaked with blood. Plaintiff was rebandaged in health care, but no further treatment was given. On January 7, 2018, Defendant Wilson checked Plaintiff's wound and ordered a swab to check for infection. Defendant Wilson also ordered an antibiotic for Plaintiff. On January 14, 2018, Plaintiff's test results showed that he did indeed have an infection. Plaintiff was prescribed a stronger antibiotic.

In March of 2018, Plaintiff was moved to the prison's west side and given a top bunk, which required Plaintiff to jump between four and six feet to his bunk, all while attempting to balance himself on a flimsy plastic stool. To make things more difficult, Plaintiff could only use one arm because he needed to use his other hand to splint his stomach while moving. On

March 7, 2018, Plaintiff discovered a growth on his stomach which he believed was caused by jumping to and from his bunk. Plaintiff was evaluated in health care and was told that he had developed a hernia.

On April 17, 2018, Defendant Wilson called Plaintiff out to discuss his condition, stating that Plaintiff was suffering from an incisional hernia, which was "perfectly normal." Plaintiff explained that he was in severe pain from jumping on and off of his bunk and requested a bottom bunk detail. Defendant Wilson merely told Plaintiff that he would be okay. Plaintiff protested, stating that he was not supposed to engage in any strenuous activity, but Defendant Wilson merely repeated that Plaintiff would be okay. Defendant Wilson issued a hernia binder for Plaintiff and ended the visit. Plaintiff continued with a top bunk until June 1, 2018, when he fell while trying to get down from his bunk using one hand. As a result of the fall, Plaintiff's abdominal wound reopened and he suffered an injury to his left ankle. Plaintiff was taken to health care, where he was given crutches, ice, an extra pillow to elevate his leg, a fiberglass splint and two ace wraps, and a bottom bunk detail.

On June 5, 2018, Plaintiff wrote a grievance on Defendants Wilson and Covert. Defendant Covert took away Plaintiff's ice detail on the same day he wrote the grievance, despite the fact that a nurse reported that Plaintiff's foot was still swollen. Plaintiff's ankle injury was confirmed by an x-ray taken on June 6, 2018.

On June 12, 2018, Defendant Covert reviewed the grievance with Plaintiff. Plaintiff protested that since Defendant Covert was named in the grievance, someone else should be doing the grievance review. Defendant Covert stated that he was just there to make things go away, and that if Plaintiff wanted a permanent bottom bunk detail, he merely needed to sign off on the grievance. Defendant Covert added that if Plaintiff did not sign off on the grievance, things

4

would not end well for him. Defendant Covert then stated, "You have a hernia right. How did it happen, because you swallowed some drugs right?" (*See* ECF No. 1, PageID.14.) Plaintiff denied this assertion and Defendant Covert responded, "That's not what I heard. You're responsible for everything that's going on with you, it's your fault." (*Id.*) Plaintiff did not sign off on the grievance. Plaintiff filed a second grievance on Defendant Covert for the retaliatory comments.

Defendant Covert then changed the stop date for Plaintiff's special medical details from June 30, 2018, to June 19, 2018, without any explanation. Plaintiff asserts that this was done in retaliation for Plaintiff's grievances. On the new stop date, Defendant Covert took Plaintiff's ace wraps, splint, and crutches and told Plaintiff to return to his unit. Plaintiff was unable to put any pressure on his foot, so Defendant Covert told Plaintiff to use the crutches to walk back to his unit and get some better shoes. Defendant Covert then ordered Plaintiff to bring the crutches right back. After returning the crutches to health care, Plaintiff was forced to limp back to his unit in excruciating pain.

Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments. Plaintiff seeks damages and equitable relief.

II. <u>Failure to State a Claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each

defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008 (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991).

Plaintiff fails to make any specific allegations against Defendant Thompson in the body of his complaint. Plaintiff makes a conclusory assertion that Defendant Thompson told him to send a kite and then refused to respond to the kite when Plaintiff complied. Plaintiff fails to explain the contents of the kite, the date that it was filed, or the circumstances accompanying Defendant Thompson's instruction to file the kite. The only other statement Plaintiff makes regarding Defendant Thompson is that she failed to assign Plaintiff a bottom bunk. However, Plaintiff fails to allege facts showing that Defendant Thompson was specifically aware of

7

Plaintiff's need for a bottom bunk, or that it was Defendant Thompson's responsibility to make Plaintiff's bunk assignment. Plaintiff has failed to specifically allege that Defendant Thompson engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

The Court notes that Plaintiff's Eighth Amendment claims against Wilson, Stabile, and Covert, and his First Amendment retaliation claim against Defendant Covert are not clearly frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Thompson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Wilson, Stabile, and Covert, and his First Amendment retaliation claim against Defendant Covert remain in the case.

An order consistent with this opinion will be entered.

Dated:  April 16, 2019                                   /s/ Paul L. Maloney
                                                                                       Paul L. Maloney
                                                                                       United States District Judge