UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONNARD NELSON #260733,

        Plaintiff,

v.

SUSAN H. WILSON, et al.,

        Defendants.
_____/

Case No. 2:19-cv-00009

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.   Introduction

State prisoner Jonnard Nelson filed this civil rights action pursuant to 42 U.S.C. § 1983.[1] Nelson was incarcerated at the Chippewa Correctional Facility (URF) in 2018. While there, he underwent abdominal surgery to remove a blockage from his large intestine. Nelson says that Defendants were deliberately indifferent to his medical needs while he was recovering from this surgery, in violation of the Eighth Amendment, and retaliated against him for filing grievances, in violation of the First Amendment.

The Defendants remaining in the case are Nurse Practitioner (NP) Susan Wilson, Corrections Officer (CO) Derek Stabile, and Registered Nurse (RN) Gerald

---

[1] Nelson commenced this action by filing a verified complaint on January 10, 2019. (ECF No. 1, PageID.1.)

Covert. Stabile and Covert are employed by the Michigan Department of Corrections (MDOC).

This report and recommendation addresses Wilson's motion for summary judgment, which was filed on December 3, 2019 (ECF No. 26, PageID.88), and the MDOC Defendants' motion for summary judgment, which was filed three days later (ECF No. 29, PageID.150). In these motions, Defendants argued that Nelson failed to properly exhaust his claims against them.

Nelson responded to both motions. (ECF No. 36, PageID.284; ECF No. 37, PageID.317.) In large part, Nelson argued, citing *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016), that he is excused from the Prison Litigation Reform Act's exhaustion requirement because under prison officials thwarted him from properly exhausting his claims.

Wilson's reply argues that Nelson failed to properly exhaust his claim because he filed his Step III appeal after the deadline. (ECF No. 38, PageID.347.)

The MDOC Defendants' reply argues that the grievance process was available to Nelson regarding his claim against Stabile. (ECF No. 39, PageID.351.) In addition, they argue that MDOC officials properly followed grievance policies when they rejected Nelson's grievance regarding Covert.

The undersigned concludes that there are no genuine issues of fact that Nelson failed to properly exhaust his claims against Defendants.

The undersigned respectfully recommends that this Court (1) grant Wilson's motion for summary judgment, (2) grant MDOC Defendants' motion for summary judgment, and (3) dismiss all of Nelson's remaining claims without prejudice.

## II.     Additional Relevant Procedural History

On April 16, 2019, the Court issued a screening opinion and order that dismissed Nelson's Fourteenth Amendment claims and all of his claims against Assistant Resident Unit Supervisor Connie Thompson because he failed to provide specific facts to state such claims. (ECF No. 5, PageID.37; ECF No. 6, PageID.45.)

This case was initially referred to Prisoner Early Mediation, but it failed to settle. (ECF No. 7, PageID.46; ECF No. 8, PageID.51; ECF No. 9, PageID.53.)

## III.    Summary of Plaintiff's Allegations

Nelson's claims flow from incidents that occurred while he was recovering from an abdominal surgery to remove an unidentified object from his large intestines. According to Nelson, Defendants either failed to provide him various necessities that he needed in his weakened condition, in violation of the Eighth Amendment, or retaliated against him for filing grievances, in violation of the First Amendment. The table below lists Nelson's claims and a summary of the alleged facts supporting the claims.[2]

---

[2]     The Court's screening opinion stated that Nelson's Eighth Amendment deliberate indifference claim against Covert was permitted to advance. (ECF No. 5, PageID.44.)  Section II's table does not include the claim, however, because Nelson does not allege such a claim in his verified complaint. (*See* ECF No. 1, PageID.1.)

3

| # | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Wilson | 8th Amendment Deliberate Indifference | 4/17/2018 | Wilson allegedly refused to renew Nelson's bottom-bunk detail. As a result, he had to use a bunkbed higher off the floor in his weakened condition. (ECF No. 1, PageID.5-9.) |
| 2 | Stabile | 8th Amendment Deliberate Indifference | Sometime Between 12/28/2017 to 1/1/2018 | Stabile allegedly refused to allow Nelson access to a meals tray, which Nelson says he needed due to his weakened condition. (ECF No. 1, PageID.13.) |
| 3 | Covert | 1st Amendment Retaliation | 6/5/2018 | Covert allegedly retaliated against Nelson by removing Nelson's crutches accommodation because Nelson filed grievances. (ECF No. 1, PageID.13-15.) |

## IV. Summary of Grievances Filed by Nelson at URF and Pursued Through Step III

The grievances the parties identified as relevant to Nelson's claims are summarized in the table below.

| Grievance Number | Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| URF-19-02-0382-17B | None. This grievance names CO Olmstead, who is not a defendant. | Olmstead allegedly inappropriately shook down Nelson's area of control. | Denied at Step I, rejected at Step II for being untimely, and denied at Step III. | ECF No. 29-4, PageID.180-185. |
| URF-18-09-2508-28E | None. This grievance names PC Suggit, who is not a defendant. | Suggit allegedly falsified documents and ordered funds to be removed from Nelson's trust account. | Rejected at Step I for being untimely. The rejection was upheld at Steps II and III. | ECF No. 29-5, PageID.186-191. |
| URF-18-08-2405-17B | None. This grievance names CO Nolan, who is not a defendant. | CO Nolan allegedly retaliated against Nelson for filing grievances against CO Riggs. | Denied at Steps I, II, and III. | ECF No. 29-6, PageID.192-197. |
| URF-18-08-2216-17B | Covert. But the grievance focuses on non- | CO Riggs allegedly retaliated against Nelson for filing grievances against CO Covert. | Denied at Steps I, II, and III. | ECF No. 29-7, PageID.198-203. |

4

| Grievance Number | Defendants Named | Issued Grieved at Step I | Outcome of Grievance | ECF No. |
|---|---|---|---|---|
| | defendant CO Riggs. | | | |
| URF-18-06-1723-28c | Covert. | Covert allegedly retaliated against Nelson by removing his accommodation for crutches because of a previous grievance filed by Nelson. Covert also allegedly attempted to interview and harass Nelson regarding other grievances filed. | Rejected at Step I for containing multiple issues. Denied at Step II. Rejected at Step III for containing multiple issues. | ECF No. 29-8, PageID.204-211. |
| URF-18-06-1631-28e | Wilson. It also names a "Nursing Supervisor" but does not explicitly name Covert. | Wilson was allegedly deliberately indifferent when she refused to provide Nelson with a bottom bunk detail after Nelson's adnominal surgery. | The grievance was denied on the merits at Steps I and II. At Step III, the grievance was rejected as untimely. | ECF No. 29-9, PageID.212-227. |

V.    **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[3] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[3]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

5

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## VI.   Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

6

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

7

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

8

whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

9

> prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## VII. Analysis

### a. Nelson's Claims Against Stabile

As shown in Section III of this report and recommendation, Nelson failed to file a grievance naming Stabile. The parties do not dispute that Nelson failed to file a grievance complaining about Stabile. Instead, the parties dispute whether Stabile and fellow COs in the Lime Unit thwarted Nelson to obtain a Step I grievance form and therefore rendered the grievance process unavailable under *Ross*, 136 S.Ct. at 1859-60.

In support of Nelson's position, Nelson offers three affidavits – his own and two are from fellow inmates. In Nelson's affidavit, he says that he returned from the hospital on December 23, 2017. (ECF No. 37-1, PageID.340.) He says that he discovered that he had not received all the medical "details" that he expected. (*Id*.)

---

[5]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

He says that he asked CO Stabile if he could call Health Care to rectify the situation. (*Id.*) He says that Stabile refused this request and then refused to provide him with a grievance form. (*Id.*) Nelson goes on to state that he attempted to get a grievance form from other unidentified COs and two fellow inmates, but was unable to obtain the form. (ECF No. 37-1, PageID.340-341.) Nelson added that, in his weakened state, he would not have been able to sit up and fill out the grievance form. (*Id.*)

Inmate John Stevenson, #780241, attested (1) that he overheard Stabile explain to coworkers about denying Nelson a grievance form, (2) that an unidentified person told him (Stevenson) that Nelson needed Stevenson to get Nelson the grievance form, and (3) that both attempts to retrieve a grievance form were thwarted by Stabile or other correctional officers. (*Id.*, PageID.342-43.)

Inmate Mitchel Fawkes, #613185, attested to a similar set of facts. (*Id.*, PageID.345-46.) Fawkes explained that an unidentified person asked him to help Nelson by getting a grievance form for Nelson. (*Id.*, PageID.345.) Fawkes stated that he made two attempts over the course of a few days, but both attempts were both futile. (*Id.*) Near the end of Fawkes's statement, he added that Stabile told him to not get involved with Nelson and to "[p]ick your battles wisely." (ECF No. 37-1, PageID.346.)

In reply, the MDOC Defendants argue that these facts, if accepted as true, still fail to establish that the grievance process was unavailable to Nelson because there were alternative ways for him to receive the grievance form. (*See* ECF No. 39, PageID.351.) The MDOC Defendants assert that Nelson could have requested the

11

grievance form from other COs, the Resident Unit Manager (RUM), an Assistant Resident Unit Supervisor (ARUS), or the Grievance Coordinator. The MDOC Defendants point out that all of persons are obligated to provide inmates with Step I grievance forms upon request.

In support of their argument, the MDOC Defendants included an affidavit from URF's Step I Grievance Coordinator, Michael McLean. (ECF No. 39-1, PageID.360.) McLean swore to facts that support MDOC Defendants' arguments. (*Id.*) Importantly, McLean added that "Residential Unit Managers, Assistant Resident Unit Supervisors, Sergeants, Lieutenants, all conduct daily rounds of the housing units, at which time a prisoner can request a grievance form." (*Id.*) All persons in the aforementioned positions, according to McLean, must provide prisoners with a Step I grievance form upon request. (*Id.*) As an additional alternative, inmates can also send McLean a kite and McLean would provide them with the grievance form. (*Id.*) McLean further attested to "the Lime Unit fil[ing] 75 Step I grievances" between December 23, 2017 to March 23, 2018. (ECF No. 39-1, PageID.362.)

After a careful review of the record, the undersigned concludes that there is no genuine issue of fact that Nelson failed to properly exhaust his claim against Stabile for the following reasons. First, the grievance process was available to Nelson. According to McLean's unrebutted testimony, Nelson was able to request a Step I grievance form from several alternative sources. McLean explained that the RUMs, ARUSs, sergeants, and lieutenants conduct daily rounds and are obligated to provide prisoners with Step I grievance forms upon request. Nelson failed to explain why he

did not request a grievance form from any of the MDOC employees making their daily rounds. Second, it appears that other inmates were able to access the grievance process without issue because 75 Step I grievances were filed during the relevant period. And third, assuming Nelson was prevented from filing a grievance against Stabile in January 2018, Nelson never complained about Stabile in the numerous Step I grievances he filed and pursued through Step III since June 2018.

### b. Nelson's Claims Against Wilson

The parties dispute whether Nelson's grievance **URF-18-06-1631-28e** – the grievance containing Nelson's medical complaint against Wilson – was improperly rejected for being untimely at Step III. Essentially, the issue is again whether Nelson is excused from the exhaustion requirement under *Ross*, 136 S.Ct. at 1859-60, because the grievance process was rendered unavailable to him.

As shown below, if an inmate chooses to file an appeal to Step III of the grievance process, MDOC's grievance policy requires that the inmate mail his or her appeal be mailed within ten days from the date that the inmate receives an unsatisfactory Step II response. (ECF No. 26-3, PageID.130.) If an inmate does not receive a Step II response, the inmate must file the Step III appeal within ten days of the date when the Step II response was due. (*Id.*)

> Step III
>
> FF. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

13

The parties do not contest that Nelson received a Step II response or that Nelson received the Step II response on July 9, 2018. (*See* ECF No. 36, PageID.300; CITE.) Instead, the parties disagree about the date on which Nelson was required to mail his Step III appeal to MDOC's Step III grievance coordinator. Nelson asserts that he needed to file his appeal on or before July 23, 2018. (*See* ECF No. 36, PageID.284.) He attests to mailing his appeal on July 23, 2018. (ECF No. 36-1, PageID.308.) Nelson's date calculation is mistaken.

Based on the MDOC's policies, Nelson needed to file his Step III appeal by July 19, 2018 – that date, however, does not account for Sunday, July 15, 2018. Accounting for Sunday, when the United States Postal Service does not provide service, Nelson's adjusted Step III appeal date is July 20, 2018. According to Step III rejection letter, MDOC calculated for the Sunday and used the July 20, 2018 date when it determined that Nelson failed to timely mail his Step III appeal. (ECF No. 36-1, PageID.312.)

In order to properly exhaust their claims, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91. When grievances are rejected for a failure to satisfy policy, the grievances fail to demonstrate proper exhaustion. *Scott v. Amani*, 577 F.3d 642, 647 (6th Cir. 2009). Here, the record shows that Nelson failed to file his Step III appeal prior to the deadline. Accordingly, the undersigned concludes that there is no genuine issue of fact that Nelson failed to properly exhaust his claim against Wilson.

### c. Nelson's Claims Against Covert

The MDOC Defendants argued that there is no genuine issue of fact that Nelson failed to properly exhaust his First Amendment retaliation claim against Covert.  In response to MDOC Defendants' motion, Nelson argues that he exhausted his First Amendment retaliation claim against Covert through grievance **URF-18-06-1723-28c**.  Specifically, Nelson argued (1) that the claim was exhausted because his grievance was denied on the merits at Step II or (2) that he is excused from the exhaustion requirement because MDOC improperly rejected his grievance at Steps I and III.  (ECF No. 37, PageID.328-334.)  The undersigned agrees with the MDOC Defendants.

**First**, no authority supports Nelson's first argument.  Although "prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits", that is not the case currently before the Court.  *Mattox*, 851 F.3d at 590-91.  Here, MDOC rejected grievance **URF-18-06-1723-28c** at Step III because it contained multiple issues.  (*See* ECF No. 29-8, PageID.205.)  So no procedural irregularity was waived with respect to the grievance containing multiple issues.  Grievances that are rejected for failing to comply with grievance procedure do not demonstrate proper exhaustion.  *Scott*, 577 F.3d at 647.  That is because prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91.  As such, the undersigned finds Nelson's first argument meritless.

15

**Second**, there is nothing in the record to suggest that prison officials thwarted Nelson from exhausting grievance **URF-18-06-1723-28c**, pursuant to *Ross*, 136 S.Ct. at 1859-60.  As shown below, MDOC policy provides that a grievance may be rejected for being duplicative and/or containing multiple unrelated issues.  (ECF No. 29-2, PageID.170; MDOC PD 03.02.130 ¶ G.)

> G.  Prisoners and parolees are required to file grievances in a responsible manner. A grievance shall be rejected by the Grievance Coordinator if it contains profanity, threats of physical harm, or language which demeans the character, race, ethnicity, physical appearance, gender, religion, or national origin of any person, unless it is part of the description of the grieved behavior and is essential to that description. A grievance also may be rejected for any of the following reasons:
>
> 1.  It is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant.
>
> 2.  The grievant is on modified access pursuant to HH through LL and has filed a grievance in

To determine the *Ross* issue, the relevant inquiry became whether MDOC improperly denied the grievance at Step III and rendered the grievance process unavailable to Nelson.[6]  The grievance was rejected at Step III for containing "multiple issues presented within the same grievance."  (ECF No. 29-8, PageID.205.)  Nelson asserted that the grievance was improperly rejected at Step III because the multiple issues within the grievance are related.  The undersigned disagrees.

When reviewing MDOC's Step III response, the "district court 'should make an independent decision based on the preponderance of the evidence but also should give 'due weight' to the determinations made during the state administrative process.'" *Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 973 (6th Cir. 2012) (quoting *Deal v.*

---

[6]  Under *Mattox*, 851 F.3d at 590-91, the procedural irregularity that caused the grievance to be rejected at Step I was waived when prison officials denied the grievance at Step II on the merits.  Consequently, the Step I rejection is no longer relevant.

16

*Hamilton Cnty. Bd. of Educ.*, 392 F.3d 840, 849 (6th Cir.2004)). The Sixth Circuit added:

> In applying this "modified de novo" standard of review, district courts may not "simply adopt the state administrative findings without an independent re-examination of the evidence," nor may they "substitute their own notions of sound educational policy for those of the school authorities which they review." *Id.* (quoting *Doe ex rel. Doe v. Metro. Nashville Pub. Schs.*, 133 F.3d 384, 387 (6th Cir.1998) and *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir.1990)). The amount of "due weight" afforded to the administrative findings varies depending on whether such findings are based on educational expertise. *McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir.2003). "Less weight is due to an agency's determinations on matters for which educational expertise is not relevant.... More weight is due to an agency's determinations on matters for which educational expertise is relevant." *Id.* Stated succinctly, a district court "may set aside administrative findings in an IDEA case only if the evidence before the court is more likely than not to preclude the administrative decision from being justified based on the agency's presumed educational expertise, a fair estimate of the worth of the testimony, or both." *Bd. of Educ. of Fayette Cnty., Ky. v. L.M.*, 478 F.3d 307, 312–13 (6th Cir.2007) (internal quotation marks and citation omitted).

*Id.*

Applying that standard, a review of the grievance shows that it contains two distinct complaints: (1) that Covert removed Nelson's crutches accommodation and (2) that Covert attempted to inappropriately review a different grievance with Nelson and threatened Nelson during the same interaction. (ECF No. 26-2, PageID.103-109.) Because Nelson complained about two unrelated incidents, the undersigned recommends that the Court find that that the grievance process was available to

17

Nelson with respect to grievance **URF-18-06-1723-28c**. It is also recommended that the Court find that there is no genuine issue of fact that Nelson failed to properly exhaust his First Amendment retaliation claim against Covert.

### VIII.  Recommendation

The undersigned respectfully recommends that this Court (1) grant Wilson's motion for summary judgment, (2) grant MDOC Defendants' motion for summary judgment, and (3) dismiss all of Nelson's remaining claims without prejudice.  If the Court adopts this recommendation, the case will be dismissed.

Dated:   July 22, 2020           /s/ *Maarten Vermaat*
                                 MAARTEN VERMAAT
                                 U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).